**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| DORI MOLLOY, | : | CIVIL ACTION NO. 05-4547 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : |  |
| AMERICAN GENERAL LIFE COMPANIES, | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

The defendant, American General Life Companies ("American General"), moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint, or compel arbitration and stay the action. (Dkt. entry no. 8.) The Court, for the reasons stated herein, will deny the motion.

**BACKGROUND**

The plaintiff, Dori Molloy ("Molloy"), began working for American General in March 1996 as an auditor. (Compl., at ¶ 2.) American General asserts that, "[o]n or about November 29, 2001, [its] Employee Dispute Resolution Program ("EDR Program") and the accompanying cover letter . . . were mailed to the homes of all active employees as of that date." (1-12-06 Decl. of Jennifer Mock ("Mock Decl."), at ¶ 1.) The EDR Program provided a "four-option process" for resolving disputes, which included an arbitration provision. (Id. at Ex. A.)

The arbitration provision generally informed employees that "[i]f your dispute involves a legally protected right . . . then you or [American General] may request . . . arbitration.  This is the forum for conclusively addressing disputes involving legally protected claims, rather than the court."  (Id.)  The arbitration provision provided that the following issues would be covered by arbitration:

> The . . . arbitration option[] appl[ies] only to disputes involving legally protected rights.  In general, a **"legally protected right"** means any claim or dispute that a court (judge or jury) would otherwise decide.  This includes any claims, demands, or actions for discrimination, retaliation, or harassment on the basis of age, sex, race, color, national origin, religion, disability, pregnancy, veteran's status, or any other status protected by federal, state, and local regulations, ordinances, or statutes.  Legally protected rights are also those brought under common law theories like wrongful discharge, breach of contract, breach of the covenant of good faith and fair dealing, fraud, defamation, violation of public policy, or any other cause of action relating to employment or the termination of employment.

(Id. (emphasis in original).)  The EDR Program also advised employees that "[y]ou are still free to consult or file a complaint with any appropriate local, state or federal agency, such as the EEOC, regarding your legally protected rights.  However, this program must be used instead of the court system if you are not satisfied with the results of the government agency process, unless otherwise prohibited by law."  (Id. (emphasis omitted).)

2

The EDR Program stated that "[s]eeking, accepting, or continuing employment with American General means that you agree to resolve employment-related claims against the company or another employee through this process instead of through the court system.  This program does not alter American General's at will employment policy."  (Id. at 3.)  The cover letter that accompanied copies of the EDR Program also informed employees about the program and stated:

> Effective January 1, 2002, the EDR [P]rogram will . . . cover employees of American General Life Companies and American General Assurance Company, as well as employees of their subsidiary companies.  No sign-up is required. Your employment with American General on and after January 1, 2002 will signify your agreement to be covered by this program.

(Id.)

American General also asserts that "each employee received an e[-]mail, through American General's internal e[-]mail system, with a PDF attachment containing the entire EDR Program [and copy of the cover letter]."  (Mock Decl., at ¶ 2.)  The e-mail stated that "[i]mplementation [of the EDR Program] within American General's Life companies and American General Assurance is now planned for January 1, 2002."  (Id. at Ex. B.)  American General contends that Molloy was an "active employee of American General when the EDR Program was distributed and was included in both the mail and e[-]mail distributions of the EDR Program. . . . Molloy continued as an American General employee on and after January 1,

3

2002." (Mock Decl., at ¶ 3.) American General further alleges that it (1) maintained a link to the EDR Program materials on its intranet site, accessible to all American General employees, and (2) distributed an e-mail to employees on or about January 1, 2003, "reminding them of the existence of the EDR Program, the intranet link to the program materials, and the perceived benefits of the EDR Program." (Id. at ¶¶ 4-5, & Exs. C & D.)

Molloy's employment was terminated on November 4, 2004. (Id. at ¶ 23; Dkt. entry no. 3, Answer, at ¶ 23.) Molloy brought this action in state court on August 4, 2005, alleging that American General violated the (1) Federal Family and Medical Leave Act ("FMLA"), (2) Federal Equal Pay Act ("EPA"), (3) New Jersey Law Against Discrimination ("NJLAD"), and (4) New Jersey Family and Medical Leave Act ("NJFMLA"). (Compl.) American General removed the action under 28 U.S.C. §§ 1331 and 1337 on September 16, 2005. (Dkt. entry no. 1, Rm. Not.) American General answered the complaint on October 6, 2005, and then moved to dismiss the complaint or compel arbitration and stay the action on January 17, 2006. (Dkt. entry nos. 3, 8.)

## DISCUSSION

### I.   The Federal Arbitration Act

The validity of an arbitration provision is generally governed by the Federal Arbitration Act ("FAA"). Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626-27

4

(1985).[1]  The FAA provides that "[a] written provision in . . .
a contract evidencing a transaction involving commerce to settle
by arbitration a controversy thereafter arising out of such
contract or transaction, . . . shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract."  9 U.S.C. § 2.  The Court
may direct a dispute to be resolved through arbitration upon
petition by a party who is aggrieved by the failure, neglect, or
refusal of another to arbitrate.  9 U.S.C. § 4.

There is a strong federal policy in favor of enforcing
arbitration agreements.  Seus v. John Nuveen & Co., 145 F.3d 175,
179 (3d Cir. 1998).  "Arbitration is a matter of contract and
courts must respect the parties' bargained-for method of dispute
resolution."  John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d
132, 136-37 (3d Cir. 1998); see also Dean Witter Reynolds, Inc.
v. Byrd, 470 U.S. 213, 219 (1985) ("The legislative history of
the [FAA] establishes that the purpose behind the passage was to

---

[1] The Court notes that recent decisions have applied the
standard governing motions for summary judgment under Rule 56(c)
to motions to compel arbitration.  See, e.g., Down to Earth
Landscaping v. N.J. Bldg. Laborers Dist. Council Local 595, No.
06-578, 2006 WL 1373169, at *2 (D.N.J. May 17, 2006) (applying
Rule 56(c) to motion to compel arbitration and citing Par-Knit
Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d
Cir. 1980)); Salvadori v. Option One Mortg. Corp., 420 F.Supp.2d
349, 353 (D.N.J. 2006) (same).  We decline to apply such a
standard because the issue of arbitrability is for the Court,
which necessarily includes any factual findings required to make
that determination.

ensure judicial enforcement of privately made agreements to arbitrate."); United Steelworkers of Am. v. Lukens Steel Co., 969 F.2d 1468, 1474 (3d Cir. 1992) ("It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties.").

A court must compel arbitration if there is clear evidence that the parties entered into an agreement to arbitrate.  9 U.S.C. §§ 3, 4; Gen. Elec. Co. v. Deutz, 270 F.3d 144, 154 (3d Cir. 2001).  In determining whether a matter must be submitted to arbitration under the FAA, the Court must determine whether: (1) a valid agreement to arbitrate exists; and (2) the specific dispute falls within the scope of the arbitration agreement. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2002).  The inquiry into whether the parties agreed to submit their disputes to arbitration, and the scope of any arbitration agreement is governed by "ordinary state law principles governing contract formation."  Deutz, 270 F.3d at 154; see Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.").  However, the FAA preempts state law to the extent that it treats arbitration agreements differently than other contracts.  Circuit City v. Adams, 532 U.S. 105, 119 (2001).

## II.  Whether The Parties Agreed To Arbitration

American General contends that it entered into an enforceable unilateral agreement with Molloy "where it offered binding arbitration in exchange for continued employment, [its] reciprocal agreement to be bound by the terms of the EDR program, and a $2,500 cash reimbursement of legal fees incurred during arbitration." (Def. Br., at 3.)  American General argues that its employees, including Molloy, accepted this agreement by continuing to work. (Def. Br., at 4-5.)  Molloy asserts that she "do[es] not recall ever receiving via e[]mail or regular mail or any other method the [EDR] Program Description or the November 29, 2001 [cover letter]." (1-19-06 Certif. of Dori Molloy ("Molly Cert."), at ¶ 2.)  Molloy also claims that (1) she "never acknowledged receiving such a document at any time," (2) no one from Human Resources ever "mentioned or suggested [she use] an EDR Policy," and (3) she "did not at any time . . . assent to being bound by the . . . EDR Policy." (Id. at ¶¶ 3-5.)

American General argues that the arbitration clause in the EDR Program is an enforceable agreement pursuant to the New Jersey Supreme Court's decision in Woolley v. Hoffman-LaRoche, Inc., 491 A.2d 1257 (1985). (Def. Br., at 5-7.)  However, "Woolley's implied-contract doctrine does not extend to a waiver-of-rights agreement," such as an arbitration agreement. See Leodori v. Cigna Corp., 814 A.2d 1098, 1105-07 (N.J. 2003)

(determining <u>Woolley</u> inapplicable to employer's attempt to enforce arbitration provision in employee handbook because, <u>inter alia</u>, "<u>Woolley</u>'s implied-contract doctrine focuses on an employer's obligation to its employees, not vice versa"). Instead, "a valid waiver results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent," not from an "employee's implied agreement to waive statutory rights." <u>Id.</u> at 1105.

American General argues that the <u>Leodori</u> decision treats arbitration provisions less favorably than general contracts and, thus, the FAA preempts New Jersey law. The Court disagrees. The New Jersey Supreme Court explained in <u>Leodori</u> that its determination that a "valid waiver results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent . . . flows directly from existing case law." <u>Id.</u> Although the cases cited by <u>Leodori</u> do not directly address the necessary showing to demonstrate assent to arbitrate, the cases demonstrate that (1) New Jersey courts will not "assume that employees intend to waive [their] rights," (2) any waiver of statutory rights "must be clearly and unmistakably established," and (3) "[o]ne party to a contract may not unilaterally impose an obligation to arbitrate upon another party to the contract." <u>Id.</u> (citations omitted).

8

The FAA mandates that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." Par-Knit Mills, 636 F.2d at 54.  New Jersey law requires that, to enforce a waiver-of-rights agreement — such as the agreement to arbitrate here — an employer seeking enforcement must show some "unmistakable indication that the employee affirmatively had agreed to arbitrate his [or her] claims." Leodori, 814 A.2d at 1107.  Leodori's requirement of affirmatively demonstrating an employee's assent to waive rights and to arbitrate is not only consistent with New Jersey case law interpreting arbitration clauses generally, but the Third Circuit's interpretation of the FAA's requirements generally.[2] Further, although the FAA and New Jersey case law favors arbitration generally, this policy does not vitiate the legal requirement that the parties affirmatively agree to arbitrate.

Molloy has indicated that she did not (1) recall receiving via e-mail or regular mail a copy of the EDR Program, (2)

---

[2] American General also cites to the Court of Appeals for the Eleventh Circuit's decision in Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (2005) to support its argument. (Def. Br., at 15-18.)  In Caley, the Eleventh Circuit concluded — in a factual scenario similar to that presented here — that, inter alia, the district court did not err in finding that employees had accepted an employer's "Dispute Resolution Policy," which included an arbitration provision, by their continued employment with the company.  Id. at 1374-75.  However, the Caley decision is not binding on the Court, and was based on an interpretation of Georgia contract law.

acknowledge receiving the EDR Program, (3) consent or assent to "being bound" by the EDR Program, or (4) discuss the EDR Program with members of American General's human resources department. American General has failed to demonstrate that Molloy affirmatively agreed to arbitrate her claims by merely stating that they (1) sent — via e-mail and regular mail — a copy of the EDR Program to Molloy, (2) sent a reminder e-mail about the EDR Program one year later, and (3) kept a link on the intranet site for its employee's reference.  Accordingly, the Court will deny the motion to compel arbitration.[3]

### CONCLUSION

The Court finds that American General has failed to show that Molloy assented to arbitrate her claims under the FMLA, EPA, NJLAD, and NJFMLA.  Therefore, the Court will deny the motion to compel arbitration.  The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

[3] Because the Court has determined that the parties did not have a valid agreement to arbitrate, the Court need not address whether the arbitration provision in the EDR Program covered the scope of Molloy's claims.

10